IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Sonya Martin,                          :

        Plaintiff,                     :

        v.                             :         Case No.  2:11-cv-264

Michael J. Astrue,                     :         JUDGE GEORGE C. SMITH
Commissioner of Social Security,                 Magistrate Judge Kemp

        Defendant.                     :

                    REPORT AND RECOMMENDATION

                    I.  Introduction

        Plaintiff, Sonya Martin, filed this action seeking review of
a decision of the Commissioner of Social Security denying her
applications for disability insurance benefits and supplemental
security income.  Those applications were filed in January, 2007,
and alleged that plaintiff became disabled on January 2, 2005.

        After initial administrative denials of her claim, plaintiff
was given a hearing before an Administrative Law Judge on
September 16, 2009.  In a decision dated October 29, 2009, the
ALJ denied benefits.  That became the Commissioner's final
decision on February 3, 2011, when the Appeals Council denied
review.

        After plaintiff filed this case, the Commissioner filed the
administrative record on June 21, 2011.  Plaintiff filed her
statement of specific errors on August 19, 2011.  The
Commissioner filed a response on October 25, 2011.  No reply
brief was filed, and the case is now ready to decide.

                    II.  The Lay Testimony at the Administrative Hearing

        Plaintiff's testimony at the administrative hearing is found
at pages 29 through 40 of the record.  Plaintiff, who was 48
years old at the time of the hearing and is a high school
graduate, testified as follows.

Plaintiff worked as an assembler and, more recently, at a Bob Evans restaurant, but only part-time.  She had to stop working as an assembler due to illness.  Her major problems are pain in her back, neck, arms and knees, as well as breathing difficulties.  She takes a number of medications, one of which makes her tired.  Back pain and muscle spasms make it hard for her to sleep at night.

Plaintiff testified that she has tried to walk for ten or fifteen minutes at a time but cannot do so.  Sitting in a chair hurts her back and neck.  She can sit for twenty minutes and then has to stand for fifteen or twenty minutes.  Recently she has experienced problems using her hands.  She can lift about five pounds and do some light housework and cooking.  She has assistance when she shops for groceries.

In a typical day, plaintiff gets her daughter ready for school and walks with her the two blocks to the school.  She does housework sporadically and rests because of her inability to sleep at night.  She has had a cane prescribed for her, and she is also depressed.  She might nap twice a day.  Her children assist her with household chores.

### III.  The Medical Records

The medical records in this case are found beginning on page 257 of the administrative record.  They can be summarized as follows.

Dr. Brown began seeing plaintiff on September 30, 1996.  He reported on March 1, 2007, that she suffered from a wide variety of ailments and that she had been prescribed four different medications.  She suffered from persistent fatigue and joint pain.  However, he did not believe she was significantly limited from performing work-related activities.

Dr. McCloud, a state agency reviewer, reviewed medical records and concluded, on March 12, 2007, that plaintiff was

limited to medium work activity.  He noted that only the x-rays
of her lumbar spine showed any abnormalities, that she had
bursitis in her left hip and some occasional giving away of her
left knee, and that she had mild COPD or asthma.  A subsequent
state agency reviewer, Dr. Vasiloff, thought she was limited to
light work and imposed a restriction on exposure to fumes, odors,
dusts, gases, and poor ventilation due to her asthma and mild
COPD.

     Plaintiff was evaluated by Dr. Villanueva based on two
appointments, on March 15 and March 19, 2007.  At that time, she
did not need ambulatory aids.  She had been referred to physical
therapy for her bursitis and knee problems.  Her diagnoses were
diabetes, controlled, hypothyroidism, generalized arthritis,
asthma, and mild COPD.  Dr. Villanueva did not believe plaintiff
had any inability to stand, walk, sit, hear, see, and speak, and
her lifting would be limited by her back pain.  In December of
2007, however, Dr. Villanueva completed a form stating that
plaintiff could only sit for two hours in a day, stand and walk
for only one hour, lift only five pounds occasionally, had
significant limitations in repetitive reaching, handling, and
fingering, had psychological limitations, and could not work on a
sustained basis.  He repeated that information on August 28,
2009.

     Plaintiff underwent a psychological evaluation on May 16,
2007.  She had never had any mental health care.  Her ability to
work at that time was limited by a bladder problem, for which she
was to have surgery.  She reported some mood swings.  The
diagnoses included an adjustment disorder with depressed mood,
and her GAF was rated at 55, but had been as high as 65 in the
past year.  Only mild impairment in her work abilities was noted,
particularly in the area of relating to others due to her bladder
problems.  A state agency reviewer concluded that plaintiff's

-3-

mental impairment was not severe.

In January, 2008, Dr. Song completed a lumbar spine residual functional capacity questionnaire. He reported having treated plaintiff for about nine months and had diagnosed her with chronic lumbosacral sprain and other back problems. Her prognosis was fair but chronic. His examinations revealed reflex changes, tenderness, swelling, muscle spasm, and muscle weakness. He thought her symptoms would occasionally interfere with her concentration, but she could not either sit, stand or walk for an entire work day. She did not need a cane, but did need to take three to four unscheduled breaks a day, and would have four or more days a month when she would be absent from work. She had other restrictions as well. He had previously reported to Dr. Villanueva on an examination performed on April 11, 2007, noting that plaintiff had been experiencing back pain for many years but now was complaining of left hip and left knee pain. His impression at that time was chronic lumbosacral sprain with left radiculopathy and internal derangement of the left knee. Dr. Song subsequently referred plaintiff to Dr. Lingam for spinal injections, and that specialist also diagnosed degenerative disc disease as well as spondylosis, sacroiliac syndrome, and myofascial pain syndrome. Dr. Lingam reported in March, 2009, that plaintiff could not perform even a full range of sedentary work.

Dr. Moncman, a neurosurgeon, also examined plaintiff pursuant to a referral from Dr. Villanueva, and he found that she had a full range of motion of the lumbar spine, could walk heel to toe and squat, could forward bend fully at the waist, and had normal muscle strength and reflexes. However, her sacroiliac joints were tender to the touch. He thought she suffered from mechanical low back pain.

Plaintiff's back was x-rayed on June 4, 2008. The study

-4-

showed mild degenerative disc disease at L2-3 and L4-5 and
degenerative changes of the facet joints at L3-4 and L4-5.  A
prior MRI showed roughly the same findings.

     The last exhibit admitted prior to the administrative
hearing was a radiology report from Madison County Hospital.  It
showed degenerative disc disease throughout the cervical spine.
The remaining medical records (Exhibits 37F through 45F) were
apparently submitted only to the Appeals Council.

IV.  <u>The Vocational Testimony</u>

     Mr. Braunig, a vocational expert, also testified at the
administrative hearing.  His testimony begins at page 40.  He
noted that plaintiff had worked as a press operator, a motor
vehicle assembler, and a prep cook.  The jobs were either light
or medium, and either unskilled or semi-skilled.  He was asked
questions about a hypothetical person who could work at the light
exertional level, could lift no more than ten pounds, who would
have to sit fifteen minutes out of each hour, who could not reach
overhead, and who was limited to simple tasks involving only a
minimal degree of personal contact in the workplace and without
production quotas.  Such a person could do a variety of light
jobs such as mail clerk, office helper, and photocopy machine
operator.  If the person were limited to sedentary work with a
sit-stand option, that person could work in jobs such as
microfilm document preparer and lens inserter.  He further
testified that if plaintiff would have to miss three or four days
of work per month, she would not be employable, and that would be
so if she had to take three or four unscheduled breaks during a
work day.

V.  <u>The Administrative Law Judge's Decision</u>

     The Administrative Law Judge's decision appears at pages 12
through 24 of the administrative record.  The important findings
in that decision are as follows.

-5-

The Administrative Law Judge found, first, that plaintiff met the insured requirements of the Social Security Act through March 31, 2007.  Next, he found that plaintiff had not engaged in substantial gainful activity from her alleged onset date of January 2, 2005 through the date of the decision.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including degenerative disc disease and vertebrogenic disorder of the cervical spine, degenerative joint disease of the thoracic spine, chronic lumbar strain, chronic obstructive pulmonary disease, and adjustment disorder with depressed mood.  The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a reduced range of light work which does not require lifting more than ten pounds or overhead reaching, which does not involve production quotas, which is limited to simple tasks, and which allows for sitting fifteen minutes out of every hour.  The ALJ accepted the vocational expert's testimony that someone with such limitations could perform approximately 12,000 jobs in the regional economy.  As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff raises the following issues.  First, she argues that the ALJ erred in the way in which he evaluated the opinions of her treating physicians.  Second, she argues that the case should be remanded to consider new and material evidence.  The Court generally reviews the administrative decision under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C.

-6-

Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In her first assignment of error, plaintiff points out that three treating physicians completed forms stating that she did not retain the capacity to perform even the demands of sedentary work activity.  She argues that although the ALJ did give a reason for rejecting those opinions - that they were based entirely on "an unquestioning acceptance of plaintiff's complaints" - the record does not support that finding. Specifically, she notes that each of these three physicians not only took a history from her, but also performed a variety of

diagnostic tests and physical examinations, and that their
opinions were therefore supported by something besides her own
report of her symptoms and limitations.  Additionally, she argues
that the ALJ unduly focused on earlier treatment notes to the
exclusion of later records which documented her symptoms and
which support the opinions of the treating doctors.

The legal principles relating to this claim are well-
established.  A treating physician's opinion is entitled to
weight substantially greater than that of a nonexamining medical
advisor or a physician who saw plaintiff only once.  Lashley
v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983);
Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  A
summary by an attending physician made over a period of time
need not be accompanied by a description of the specific
tests in order to be regarded as credible and substantial.
Bull v. Comm'r of Social Security, 629 F.Supp. 2d 768, 780-81
(S.D. Ohio 2008), citing Cornett v. Califano, No. C-1-78-433
(S.D. Ohio Feb. 7, 1979).

A physician's statement that plaintiff is disabled is not
determinative of the ultimate issue.  The weight given
such a statement depends on whether it is supported by
sufficient medical data and is consistent with other evidence
in the record.  20 C.F.R. §404.1527; Harris v. Heckler, 756 F.2d
431 (6th Cir. 1985).  In evaluating a treating physician's
opinion, the Commissioner may consider the extent to which that
physician's own objective findings support or contradict that
opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v.
Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The
Commissioner may also evaluate other objective medical evidence,
including the results of tests or examinations performed by non-
treating medical sources, and may consider the claimant's
activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d

284 (6th Cir. 1994).  If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference.  <u>Harris</u>, 756 F.2d at 435.

The Commissioner responded to this argument by pointing out that, according to the ALJ, the objective evidence produced by various tests and studies showed only mild abnormalities that could not have been considered disabling.  Further, there was evidence from both other treating sources (particularly Dr. Brown) and from non-examining physicians showing that she could perform work activity at either the medium or light exertional levels, and Dr. Villanueva expressed a similar view on at least one occasion.  The Commissioner also notes that the three doctors who did express an opinion of disability did not agree with each other on various matters, and that provided an additional reason supporting the ALJ's decision to assign them less weight. Finally, the Commissioner argues that it was apparent from the record that some or all of these physicians accepted many of plaintiff's complaints at face value, and because the ALJ found her not to be totally credible (a finding not disputed in her statement of errors), the ALJ was entitled to use this as an additional basis for rejecting the treating sources' conclusions.

The ALJ specifically concluded that the objective medical evidence did not support the opinions of Drs. Villanueva, Song, and Lingam. (Tr. 18).  Citing to 20 C.F.R. §404.1527(d) and SSR 96-2p, he considered the pertinent factors but assigned essentially no weight to their views.  In doing so, he did not state that their opinions were not based in part on tests or other objective evidence, but rather concluded that the only "plausible" explanation for their opinions, given the sparse objective evidence of serious or disabling conditions, must have been their willingness to accept plaintiff's descriptions of her symptoms.  (Tr. 19).  In reaching this latter conclusion, he

thoroughly reviewed the x-ray evidence, which showed little in
the way of abnormalities; the MRI showing only some degenerative
changes; the results of Dr. Mueller's examination, which revealed
only some tenderness in the paraspinal muscles; Dr. Moncman's
examination, which was much the same; and the contrary opinions
of Dr. Brown, who had treated her for ten years, and of Dr.
McCloud and Dr. Vasiloff, the state agency reviewers.  The ALJ
also gave plaintiff the benefit of the doubt as to functional
limitations and imposed a sit/stand option and limits on overhead
reaching, as well as limiting her to light work activity.  (Tr.
19-20).

It is evident from the ALJ's decision that his belief that
the three treating sources who pronounced plaintiff disabled must
have placed great reliance on her self-report of disabling
symptoms was by no means the only reason given for his decision.
Rather, he explained why the test results from both the treating
sources and others did not appear to support an RFC for less than
sedentary work, and used that explanation to infer that the
treating sources must have based their opinions on something
apart from the objective medical evidence.  This Court has
consistently upheld such determinations by an ALJ where the
objective evidence "shows mostly normal findings" or "shows no
significant abnormalities."  See, e.g., Hericks v. Astrue, 2012
WL 161105, *5 (S.D. Ohio Jan. 19, 2012), adopted and affirmed
2012 WL 441169 (S.D. Ohio Feb. 10, 2012); Stephens v. Sullivan,
792 F.Supp. 566, 570 (S.D. Ohio 1992).  Because the ALJ had, and
articulated, specific and valid reasons for refusing to give
controlling weight to the opinions of Drs. Villanueva, Song, and
Lingam, he was then entitled to consider the other medical
opinions in the record and use them to determine plaintiff's
residual functional capacity.  The Court sees no error in the way
that task was performed, and therefore concludes that plaintiff's

first assignment of error provides no basis for reversal or
remand.

Plaintiff's other argument is that the medical evidence
submitted to the Appeals Counsel satisfies the standard for a
sentence six remand.  That evidence consists primarily of an EMG
the study showing C5 and C6 radiculopathy, and reported increases
in pain plaintiff claimed to experience in various joints such as
the shoulders, hip, neck and back.  Plaintiff claims that this
additional evidence of her cervical radiculopathy is material and
may well have resulted in a change in the ALJ's residual
functional capacity finding.  The Commissioner, on the other
hand, argues that the evidence is not material because "it
consisted only of cumulative medical evidence and a patently
deficient medical opinion."  Commissioner's memorandum, Doc. 20,
at 16-17.

Again, the standard under which to judge a request for a
sentence six remand which is based on new and material evidence
is well-known.  The remand provision of 42 U.S.C. §405(g) was
amended in 1980 in an effort to limit remands for consideration
of additional evidence in social security cases.  Willis v.
Secretary of H.H.S., 727 F.2d 551 (6th Cir. 1984) (citing
Dorsey v. Heckler, 702 F.2d 597 (5th Cir. 1983)).  The
statute provides that the Court may order a case remanded
for further consideration of additional evidence "only upon a
showing that there is new evidence which is material and
there is good cause for the failure to incorporate such
evidence into the record in a prior proceeding."  42 U.S.C.
§405(g).  The plaintiff has the burden of proof on the issue
of whether a remand is appropriate.

To show good cause, plaintiff must present some
justification for the failure to have acquired and presented
such evidence for inclusion in the record during the hearing

-11-

before the Administrative Law Judge.  <u>Willis v. Secretary of
H.H.S.</u>, 727 F.2d 551; <u>Birchfield v. Harris</u>, 506 F.Supp. 251,
252-53 (E.D. Tenn. 1980).  Evidence submitted after the ALJ's
decision and which is not reviewed by the Appeals Council
cannot be considered by the district court unless good cause
is shown for the failure to have presented the evidence to
the ALJ.  <u>Cotton v. Sullivan</u>, 2 F.3d 692 (6th Cir. 1993).

    To be "material" within the meaning of 42 U.S.C.
§405(g), the new evidence must be relevant and probative and
must establish a reasonable chance that the Commissioner
would reach a different conclusion.  <u>Chancey v. Schweiker</u>,
659 F.2d 676 (5th Cir. 1981); <u>Thomas v. Schweiker</u>, 557
F.Supp. 580 (S.D. Ohio 1983).  New evidence on an issue
already fully considered is cumulative, and is not sufficient
to warrant remand of the matter.  <u>Carroll v. Califano</u>, 619
F.2d 1157, 1162 (6th Cir. 1980).  Additionally, the new
evidence must relate to a condition which affected the
plaintiff's ability to work at the time the administrative
decision was made.  Evidence concerning a newly-developed
medical condition is not ordinarily relevant to the question
of whether the plaintiff was disabled at the time the
Secretary's decision was entered.  <u>Oliver v. Secretary of
H.H.S.</u>, 804 F.2d 964 (6th Cir. 1986).

    Here, the Court agrees that none of this new evidence is
material to the ALJ's decision because there is no probability
that a different decision would have been rendered had the ALJ
considered it.  The ALJ did find that plaintiff suffered from
degenerative disease of the cervical spine, and imposed a
restriction on overhead reaching for that reason, as well as
limiting plaintiff to lifting no more than ten pounds.  Thus, he
did consider the impact of her cervical condition, and, as the
Commissioner points out, the additional evidence she submitted

-12-

showed only mild abnormalities in the cervical spine, and imaging done of her shoulder was essentially normal.  Further, additional evidence as to her back condition again showed only mild to moderate degenerative changes, and Dr. Villanueva's repetition of the earlier opinion as to disability was no more well-supported than the former one.  Plaintiff did undergo rotator cuff surgery, but there is no indication that any functional limitations either from the underlying condition or the surgery would have impacted the residual functional capacity determined by the ALJ to any significant extent, and certainly not for a 12-month duration. Consequently, there is no basis for ordering sentence six remand here.

VII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

VIII.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to

-13-

object to the Report and Recommendation will result in a
waiver of the right to have the district judge review the
Report and Recommendation de novo, and also operates as a
waiver of the right to appeal the decision of the District
Court adopting the Report and Recommendation.  See Thomas v.
Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d
947 (6th Cir. 1981).


                                      /s/ Terence P. Kemp
                                      United States Magistrate Judge